UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
ISMAEL SIP TEYUL,

Plaintiffs,

- against -

WARDEN OF THE METROPOLITAN DETENTION CENTER, BROOKLYN, et al.,

Defendants.
------------------------------------------------------x

**MEMORANDUM & ORDER**
26-CV-06879 (PKC)

PAMELA K. CHEN, United States District Judge:

On October 26, 2026, Ismael Sip Teyul ("Petitioner") filed a petition for a writ of habeas corpus to challenge the lawfulness of his detention stemming from his arrest on October 24, 2026 by United States Immigration and Customs Enforcement ("ICE"). For the following reasons, the Petition is GRANTED, and Petitioner must be released immediately.

**BACKGROUND**

Petitioner is a citizen of Guatemala who has lived in the United States since approximately September 2003. (Pet., Dkt. 1, ¶¶ 1, 6.) On September 16, 2026, ICE issued a Form I-200 Warrant for Arrest of Alien to arrest Petitioner, (Decl. of Frank Franco, Dkt. 6-1, ¶ 7), after being notified the previous day of Petitioner's criminal arrest by New York State Police, (*id.* ¶ 6). On the morning of October 24, 2026, ICE officers arrested Petitioner in Pawling, New York pursuant to Section 1226(a) of the Immigration and National Act ("INA") and transported him to the ICE Newburgh Office for further processing. (Pet., Dkt. 1, ¶ 2; Decl. of Frank Franco, Dkt. 6-1, ¶ 8; Dkt. 6, at ECF[1] 1.) During processing, an ICE officer "served Petitioner with a Form I-200, Warrant for Arrest of Alien and placed him into removal proceedings with the issuance and filing of a Form I-

[1] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not to the document's internal pagination.

862 Notice to Appear ("NTA")," which stated that Petitioner was subject to removal from the United States pursuant to Section 212(a)(6)(A)(i), 8 U.S.C. § 1182(a)(6)(A)(i), and Section 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i), of the INA. (Decl. of Frank Franco, Dkt. 6-1, ¶ 9.)

When drafting the NTA, ICE Officer Keith Ryder listed the address of the Metropolitan Detention Center ("MDC") because "Petitioner was ultimately expected to be housed at MDC. However, Petitioner first needed to be held at Delaney Hall, as MDC requires 48 hours' advance notice before accepting an individual for housing." (*id.* ¶ 12.) That same day, Petitioner was transferred and arrived at Delaney Hall Detention Facility in Newark, New Jersey at approximately 1:08 p.m. (*id.* ¶ 14.) It was not until October 28, 2026, that Petitioner was transferred to MDC at approximately 7:20 p.m., where he remains detained pending his removal proceedings pursuant to 8 U.S.C. § 1226(a). (*id.* ¶ 17.)

On October 26, 2026, Petitioner filed this instant petition for a writ of habeas corpus to challenge the lawfulness of his detention. (Pet., Dkt. 1.) The next day, the Court issued an Order to Show Cause directing Respondents to show cause why a writ of habeas should not be issued and why Petitioner should not be immediately released. (Dkt. 4.) Respondents filed an initial response on November 3, 2026, arguing that the Court lacks jurisdiction and should transfer the case to the United States District Court for the District of New Jersey because Petitioner was detained at Delaney Hall when the Petition was filed. (Dkt. 6, at ECF 3–5.) Petitioner argues that jurisdiction is proper in this Court under the unknown-custodian exception where, as here, "the government had not disclosed the detainee's location and counsel's efforts, including locator searches, failed to identify the custodian." (Pet., Dkt. 1, ¶ 10.) Specifically, Petitioner's counsel filed in this District because (1) "the Notice to Appear received by counsel identifies a Brooklyn address on 29th Street that counsel identifies as MDC," and (2) "[r]epeated searches of ICE's

detainee locator" on October 24, 25, and 26, including at 8:25 p.m. just hours before the Petition was filed, failed to locate him. (*id.* ¶ 4.)

On November 3, 2026, the Court directed Respondents to address whether the jurisdictional issue would be cured by the submission of an amended petition, as Petitioner is currently detained at MDC, and why a writ of habeas corpus should not be issued, as already directed by the Court. (11/3/2026 Dkt. Order.) That same day, Petitioners filed an amended petition. (Dkt. 7.) On November 4, 2026, Respondents submitted a letter arguing that the jurisdictional issue would not be cured by an amended petition, but "[s]hould the Court reject Respondents' jurisdictional argument," then this Court's decision in *Anacona-Uni v. Warden of MDC*, No. 26-CV-6650 (PKC), 2026 WL 3168485, (E.D.N.Y. Oct. 22, 2026) would control this case:

> In *Anacona-Uni*, the Court determined that where ICE did not issue an NTA before arresting Petitioner pursuant to a Form I-200 Warrant, ICE did not have authority to arrest Petitioner, which was a dispositive and independent basis to grant the habeas petition. *Id.* at *2. Because the NTA here issued after Petitioner was arrested pursuant to a Form I-200 Warrant, the Court's decision in Anacona-Uni would control. *See contra*, *e.g.*, *Gagea v. Maldonado*, 206 WL 2859032 (E.D.N.Y. Sept. 23, 2026) (Kovner, J.).

(Dkt. 8, at ECF 2.)

**DISCUSSION**

## I. The Court Has Jurisdiction

There are "two traditional requirements for a federal court to entertain a habeas petition: that the petition be filed in the district of confinement and that it name the petitioner's immediate custodian." *Ozturk v. Hyde*, 136 F.4th 382, 390 (2d Cir. 2025). In regard to the first requirement, the district of confinement is the district where a habeas petitioner is physically confined "[a]t the time the petition was filed." *Id.* at 391 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 443 (2004)). With respect to the second requirement—the immediate-custodian rule—a petition must generally

name "some person who has the immediate custody of the party detained" rather than a remote supervisory official because, "[b]y definition, the immediate custodian and the [detained person] reside in the same district." *Padilla*, 542 U.S. at 444 (emphasis in original).

However, there are exceptions to these general rules. In *Rumsfeld v. Padilla*, the Supreme Court recognized that when a detained person "is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." 542 U.S. at 450 n.18. Although courts refer to this as the "unknown-custodian exception," it impacts the application of both the district of confinement and immediate custodian rules. *See Suri v. Trump*, No. 25-1560, 2025 WL 1806692, at *4 (4th Cir. July 1, 2025) (finding that the unknown-custodian exception "encompasses" an exception to both the district of confinement and immediate custodian rules); *Tacuri ex rel. Guanoluisa v. Francis*, 815 F. Supp. 3d 278, 283 (S.D.N.Y. 2025) (applying the unknown-custodian exception in the district of confinement analysis). Thus, "if the government moves a detainee from a district and their attorney cannot discover their location with reasonable inquiry, that attorney must be able to file a habeas petition in the detainee's last-known location against their ultimate custodian." *Flores-Linares v. Bondi*, No. 26-CV-00298 (SJB), 2026 WL 179208, at *4 (E.D.N.Y. Jan. 22, 2026), citing *Suri*, 2025 WL 1806692, at *6. To determine the district of confinement, as with the immediate custodian, a petitioner is permitted to "rely on the information available about the location of the petitioner on the *day* the petition is being filed." *Id.* The exception ensures that "actions taken by the Government do not serve to deprive individuals of their right to challenge the legality of their confinement, and to 'prevent the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum.'" *Tacuri ex rel. Guanoluisa*, 815 F. Supp. 3d at 283 (citation omitted).

By all accounts, Petitioner was held in an undisclosed location by an unknown custodian when the Petition was filed, making it impossible to determine the district of his confinement. His counsel "repeated[ly]" searched the ICE Online Detainee Locator System to determine Petitioner's location, including at 8:25 p.m. on October 26, 2026, just hours prior to filing the Petition. (Pet., Dkt. 1, ¶ 4; Dkt. 1-2.) No search resulted in any information about Petitioner's whereabouts. (Pet., Dkt. 1, ¶ 4.) Moreover, the NTA received by counsel identified a Brooklyn address on 29th Street that counsel identified as MDC. (*id.* ¶ 23.) Accordingly, Petitioner's counsel reasonably concluded that Petitioner remained detained within the Eastern District of New York at the time the Petition was filed. No reasonably diligent attorney could have known that Petitioner was being temporarily held at Delaney Hall, only to be subsequently transferred to MDC. Applying this exception, Petitioner's district of confinement at the time the Petition was filed is the last known district where he was detained, according to the NTA: the Eastern District of New York.

Respondents argue that *Ozturk*'s application of the district of confinement rule gives the Court no choice but to transfer Petitioner's case to the District of New Jersey. (Dkt. 6, at ECF 4–5 (citing *Ozturk*, 136 F.4th at 390–91).) Specifically, Respondents contend that *Ozturk* seems to stand for the "proposition that such transfer is required in any case where (as here) it is ultimately revealed that an immigration detainee was moved to an out-of-district detention facility at some point prior to the exact date and time of the petition's filing." *Aguillon v. Maldonado*, No. 26-CV-5055 (NRM), slip op. at 5–6 (E.D.N.Y. Aug. 26, 2026).

Yet *Ozturk* does not sweep so broadly. *Ozturk* resolved the narrow question of the "propriety of the transfer of the case between two jurisdictions and did not purport to answer all questions about the meaning of a district of confinement." *Flores-Linares*, 2026 WL 179208, at

*3. Initially, a district court in Massachusetts determined that Vermont was the district of confinement where, at the time a habeas petition was filed, ICE was moving the petitioner through Vermont to a detention facility in that state, where she was ultimately detained overnight before being flown to Louisiana. *See Ozturk v. Trump*, 777 F. Supp. 3d 26, 43 (D. Mass. 2025). The District Court then ordered the Government to transfer the petitioner from Louisiana back to Vermont. *Id.* In ruling on an application for an emergency stay of the transfer order pending appeal, the Second Circuit in *Ozturk* found it was not inappropriate for the District Court to order Ozturk's return to that district for further habeas proceedings. 136 F.4th at 390–94. It did not, however, create a mandatory rule requiring transfer. As the Honorable Sanket Bulsara of this District recently noted: "Nothing about the [Second Circuit's] blessing the transfer created a rule that venue is lost at the exact moment of a district border crossing." *Flores-Linares,* 2026 WL 179208, at *3. Rather, "application of the district of confinement rule to habeas petitions such as this one is a fact-specific endeavor." *Aguillon*, slip op. at 6.

Accordingly, in the wake of *Ozturk*, numerous courts in this Circuit have applied the unknown-custodian exception to deny a motion to transfer where, as here, no reasonably diligent attorney could locate the Petitioner at the time of filing. *See e.g. Aguillon*, slip op. at 5–6 (denying motion to transfer habeas petition to District of New Jersey upon examination of "the myriad information" petitioner's counsel relied upon to conclude that the petitioner was still detained within the Eastern District of New York); *Bohorquez v. Mullin*, No. 26-CV-2053 (AMD), 2026 WL 1162428, at *2 (E.D.N.Y. Apr. 29, 2026) (applying the unknown-custodian exception to the district of confinement rule where the petitioner was held in New Jersey when the petition was filed but his last known location was in the Eastern District of New York); *Valdes Acevedo v. Nassau Cnty. Corr. 6 Ctr.*, No. 26-CV-00250 (NJC), 2026 WL 184645, at *9 (E.D.N.Y. Jan. 24,

2026) (applying the unknown-custodian exception to deny a motion to transfer after determining that "at the time the Petition was filed, no reasonably diligent attorney (or family member) could have known" the petitioner's location); *Flores-Linares,* 2026 WL 179208, at *4–5 (unknown custodian exception permitted the court to retain jurisdiction where there was no way for the petitioner's counsel to know that his client had been transferred to New Jersey, and instead "acted on the only reasonable information available—that on the day the Petition was filed, Petitioner was in [E.D.N.Y.]"); *Tacuri ex rel. Guanoluisa*, 815 F. Supp. 3d at 284–85 (S.D.N.Y. 2025) (applying the unknown-custodian exception where the petitioner had been removed from the Southern District of New York and was in transit to another district when the petition was filed, but her location "was not available to individuals exercising reasonably diligent effort at the time that Petitioner's next friend filed the Petition").

Moreover, the Court's exercise of jurisdiction comports with traditional venue considerations. *See Suri v. Trump*, 785 F. Supp. 3d 128, 149 (E.D. Va. 2025), *aff'd*, 184 F.4th 260 (4th Cir. 2026) (resorting to traditional venue considerations is appropriate when applying the default rules of habeas jurisdiction became untenable); *Tacuri ex rel. Guanoluisa*, 815 F. Supp. 3d at 285 (taking into account traditional venue considerations in determining the district of confinement). First, the Eastern District of New York has a strong interest in hearing Petitioner's habeas petition since Petitioner currently is being detained *at MDC*. Moreover, Respondents are not prejudiced by litigating Petitioner's matter here.

For all these reasons, the Court has jurisdiction and declines to transfer Petitioner's habeas petition to the District of New Jersey.

## II. Habeas is Warranted

A federal court may grant a writ of habeas corpus to a person "in custody in violation of the Constitution or laws . . . of the United States." 28 U.S.C. § 2241(c)(3). "Habeas is at its core a remedy for unlawful executive detention. The typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008).

Respondents rely on a Form I-200 Warrant to justify the Section 1226(a) arrest, (Dkt. 6, at ECF 2), the procedures for which are governed by Department of Homeland Security regulations. Under 8 C.F.R. § 1236.1(b)(1), a noncitizen may be arrested and taken into custody pursuant to a Form I-200 Warrant "*[a]t the time of issuance of the [NTA]*, or at any time thereafter." 8 C.F.R. § 1236.1(b)(1) (emphasis added). In other words, a "[Form] I-200 [Warrant] cannot be used to effectuate an arrest before an NTA has been issued." *Anacona-Uni*, 2026 WL 3168485, at *1, citing *Yeleshev v. Larocco*, No. 26-CV-2294 (SJB), 2026 WL 1353806, at *2 (E.D.N.Y. May 14, 2026) (collecting cases).

Respondents concede that "the NTA here [was] issued after Petitioner was arrested pursuant to a Form I-200 Warrant." (Dkt. 8, at ECF 2.) But "[t]here is no 'leeway'; [i]f ICE wants to use a warrant, it must have a valid NTA in place." *Anacona-Uni*, 2026 WL 3168485, at *2 (citations omitted). Accordingly, "when ICE arrested [Petitioner,] they had no authority to do so," which is a "dispositive and independent basis to grant the writ." *Anacona-Uni*, 2026 WL 3168485, at *2 (citation omitted).

Respondents' gesture toward *Gagea v. Maldonado*, No. 26-CV-4817 (RPK), 2026 WL 2859032 (E.D.N.Y. Sept. 23, 2026) does not alter that conclusion. (Dkt. 8, at ECF 2.) *Gagea* addressed the consequences of ICE's violation of 8 C.F.R. § 1236.1(b)(1), concluding that the petitioner had not demonstrated the prejudice necessary to obtain relief under the *Accardi* doctrine.

*See* 2026 WL 2859032, at *2–3. Critically, however, the *Accardi* prejudice requirement applies to federal regulations, not statutory violations. *See P.A.G.C. v. Genalo, ET AL*, No. 26-CV-6545 (RER), 2026 WL 3216694, at *11 (E.D.N.Y. Oct. 27, 2026). It does not resolve an independent violation of U.S.C. § 1226(a). *Id.* The reason for this is simple: courts do not "predict how the government will react to a ruling that requires it to follow the law and then proceed[ ] to assess the resulting 'costs' and 'benefits.' *Niz-Chavez*, 593 U.S. at 171. However inconvenient the government may find the statute's requirements, 'pleas of administrative inconvenience and self-serving regulations never 'justify departing from the statute's clear text.'" *Id.*

Here, as in *P.A.G.C.*, the Government did not have the statutory authority to arrest Petitioner. Section 1226(a) authorizes arrest and detention on a warrant only "*pending a decision* on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). The Court in *P.A.G.C.* concluded that because removal proceedings commence at the filing of an NTA with the immigration court, *see* 8. C.F.R. §§ 1003.14(a), 1239.1(a), the Government's authority under § 1226(a) does not arise until the NTA has been filed. 2026 WL 3216694, at *7. Here, the Government issued an I-200 Warrant and arrested Petitioner on that warrant; only then did it issue the NTA. (Dkt. 8, at ECF 2.) As such, his arrest and detention under Section 1226(a) lack statutory authorization. *See* 8 U.S.C. § 1226(a). And because Petitioner's arrest and detention was unlawful, his continued detention is likewise. *See P.A.G.C.*, 2026 WL 3216694, at *9 ("arrest and detention on a defective warrant might be curable, … , but arrest and detention without statutory authority is not"). Accordingly, habeas is warranted.

**CONCLUSION**

Petitioner Ismael Sip Teyul's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, (Pet., Dkt. 1), is therefore GRANTED.

Respondents are hereby ORDERED to release Petitioner immediately, and no later than November 10, 2026 at 12:00 p.m. ET. Respondents shall release Petitioner subject to the conditions at which he was at liberty before he was detained, without any additional constraints on his liberty, including, but not limited to, electronic or GPS monitoring. Respondents must release Petitioner with all of his belongings that are in Respondents' possession, including but not limited to identification cards, clothing, and money.

Respondents shall confirm compliance with these directives in a filing on the docket by November 10, 2026 at 5:00 p.m. ET.

Respondents may not administratively recharacterize the release granted by this Order as grounds to impose conditions or re-impose existing conditions in conjunction with release (including release on recognizance or similar instruments) without prior notice to and authorization from the Court.

Respondents shall not re-detain Petitioner without first moving before this Court to demonstrate compliance with all applicable regulatory, statutory, and constitutional requirements necessary to arrest and detain Petitioner. Should Respondents seek to re-detain Petitioner, they are directed to file a motion with the Court that justifies lawful detention. The Court retains jurisdiction to review any subsequent arrest or detention of Petitioner by Respondents to ensure compliance with this Memorandum & Order.

Should Petitioner seek an award of reasonable fees and costs pursuant to the Equal Access to Justice Act, he may do so by filing a letter application on the docket within 30 days of a final judgment in this action. *See* 28 U.S.C. § 2412(d)(1)(B).

The Clerk of Court is respectfully directed to enter judgment consistent with this Memorandum & Order and close the case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: November 8, 2026
Brooklyn, New York